ROY J. RASMUSSEN, APPELLEE, V. HUNGERFORD POTATO GROWERS ASSOCIATION ET AL., APPELLANTS.

FILED OCTOBER 20, 1923.  No. 22520.

1. **Appeal: JURISDICTION: QUESTION OF FACT.** Where the matter of jurisdiction turns on a question of fact, the ruling of the trial court thereon will not be disturbed unless it is certain from the record that it was wrong.

2. **Election of Remedies: RESCISSION: DAMAGES.** The two remedies of damages and rescission are inconsistent, the former proceeding upon affirmance, and the latter upon disaffirmance, of the contract; and one who has prosecuted his action in damages to a first trial will not be permitted to change his front upon the eve of a second trial and proceed in rescission.

3. **Contracts: RESCISSION.** One who rescinds for fraud must act promptly upon discovery of the facts, announcing his intention to his adversary and returning what he has received. This should be done before he begins his action, nor should he fail to allege in his petition that he has so rescinded.

4. **Election of Remedies.** A mistaken and unsuccessful attempt to select a remedy will not annul a former election, nor preclude a plaintiff from pursuing the remedy first selected.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Reversed.*

*Wharton & Waldron* and *J. E. Porter,* for appellants.

*McKenzie, Cox, Burton & Harris, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and GOOD, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

In the court below the first trial to a jury resulted in a disagreement. In the second, both parties moved for a directed verdict, and the court found for the plaintiff, Rasmussen, against all of the defendants, Hungerford, Hungerford Potato Growers Association, a corporation, and Snowden. The suit was brought in Douglas county, where summons was served upon Snowden personally and upon the corporation by delivering a copy to Snowden as its secre-

tary-treasurer.   Service was then had upon Hungerford in Dawes county.

The defendants, or some of them, represented to plaintiff that they owned, and could sell him, a certain 80 acres of land in Dawes county, and that they would convey the same to him for $1,800 and a two years' use of the land; $300 of said $1,800 to be paid in cash and the other $1,500 March 5, 1917, when deed and abstract were to be delivered.   Plaintiff believed, relied and bought, paying the $300 down.   Contract was made and deposited in escrow.   This was on January 27, 1917.   On the 5th of March following plaintiff found by the abstract, which had by that time been furnished, that there was a $500 mortgage on the eighty and it was arranged that the defendant company should take only $1,000 of the escrow money, leaving $500 to await the payment of the mortgage.   This it did.   Plaintiff went out to look at the land in May of 1917, was shown the 80 acres by employees of the company, and returned well pleased with his bargain.   Later in May Hungerford, who was the president of the corporation, learned, so he says, that the sections containing the land involved abutted the range line on the west and were short, so that the company could not convey the land sold, or at least a considerable portion of it.   He wrote plaintiff a letter so explaining and offered to give him other land in lieu thereof or to return him his purchase money.   Plaintiff wrote back saying that he wanted his land; that if it was short because of mistake in the government survey "Uncle Sam" was good for it.   The matter ran along until February of 1918, the mortgage still unpaid, the plaintiff urging specific performance.   Then Hungerford went to Omaha and repeated to Rasmussen in person what he had said in his letter, told him that he believed the section short and that there was no land there, explained to him how that might happen because of error in the government survey despite the fact that the abstract showed as it did, explained that he did not want to pay off the mortgage because that would be throwing good money after bad if the land was lacking as he believed, and urged

him to take another eighty or to accept a return of his money. Plaintiff refused, demanding the payment of the mortgage and the delivery of his deed, and stating that the land sold him was worth $5,000 or $6,000. Hungerford testified that he then asked plaintiff if he would agree not to hold him or his company if the mortgage was paid off and the deed delivered, and that plaintiff said "yes." Plaintiff denies this utterly. However this may be, the mortgage was paid, the deed taken from escrow by the plaintiff, and the remaining $500 taken down by the company.

On June 22, 1918, plaintiff brought suit in damages for fraudulent representation, alleging, as above stated, that defendants had told him that they owned the land and could sell it to him, etc., and alleging further that their statements were false and that he had been damaged in the sum of $6,000. Defendant Snowden did not answer. Defendants Hungerford and the company appeared specially, objecting to the jurisdiction, and setting forth by affidavit that at the time of the commencement of the suit Snowden had sold his stock and resigned his office, and that the company had closed its Omaha office and established its headquarters at Chadron, where Hungerford resided. The court overruled their special appearance. Both answered, saving their jurisdictional question. Hungerford pleaded that he was acting for the company, and generally denied the petition. The company set out all of the matters appearing in the foregoing statement of facts. Trial was had, as above stated, resulting in a disagreement of the jury. Thereupon, upon the second trial, the one presently in question, the plaintiff asked to obtain leave to amend his petition by interlining these two paragraphs, to wit:

"Plaintiff has offered to return to the defendant the deeds which plaintiff received from said defendant, and herewith brings the same into court and tenders the same back to the said defendant.

"Wherefore, plaintiff prays for judgment against the said defendant for the sum of $1,800 and interest thereon at the

rate of seven per cent. per annum, from the 27th day of January, 1917."

And in connection with this the following explanation took place between the two parties and the court: "The Court: You say here, 'Wherefore, plaintiff prays for judgment against the said defendant for the sum of $1,800 and interest thereon at the rate of seven per cent.' Mr. McKenzie: That is in lieu of the other prayer. Mr. Porter: Well, then paragraph 6 is intended to be stricken, is it? Mr. McKenzie: Yes, I don't care about paragraph 6. Mr. Porter: The defendant then would ask that the answer which was filed to the original petition stand as the answer to the amended petition. Mr. McKenzie: Oh, yes; that is agreeable. The Court: It is merely a suit now to determine whether you are entitled to the $1,800 back? Mr. McKenzie: That is all. The Court: Narrows the issue down to that? Mr. Porter: Yes."

First of all should be considered the special appearance and whether the trial court was in error in overruling the same. Miss Hungerford, daughter of the defendant of that name, testified that she was the secretary-treasurer of the corporation at the time the suit was commenced, succeeding Snowden, who had resigned in 1917. Her father corroborated her. But she was not permitted to testify as to the contents of minute book or record in that regard, no foundation for such testimony having been laid. The minutes had not been lost and there was no evidence that she was present when they were made. It appears that defendant omitted to produce them in court.

The presiding judge could properly have refused to believe the statement that Miss Hungerford was such officer, and found that Snowden remained secretary and treasurer at the time of the beginning of the action. He was entitled to rely upon the law that an officer holds his office until his successor is elected and qualified, rather than upon testimony somewhat in the nature of a conclusion. The action was brought in the county where the principal place of business of the corporation was fixed by its articles. This

was proper. The statute authorizes it and the court approves it. Comp. St. 1922, sec. 8577; *Fremont Butter & Egg Co. v. Snyder & Co.*, 39 Neb. 632. If jurisdiction over the company was obtained, it follows that Hungerford also was in court. We are not disposed to review the decision of the district court upon this point, regarding it as turning upon the question of fact which the trial judge was at liberty to determine as he did.

If the action became an action in rescission by the agreement made upon the second trial, it cannot be maintained and the judgment cannot be affirmed. The suit, as originally brought and as first tried, was clearly for damages for fraudulent representations. As amended upon the trial in question, it simply prays for the money paid by the plaintiff, and the case seems to have proceeded upon the theory of a disavowal of the contract and a placing of the parties in *statu quo*. Not only did the plaintiff ask for the exact amount of the purchase money paid by him, instead of for the $6,000 claimed in the original petition, but his proof was in rescission only. He tendered back the deed which he had received, a repudiation, rather than an affirmance of, the contract. He expressly stated to the court upon trial that his suit was only to determine whether he was entitled to his $1,800 back.

The two actions are inconsistent, the one proceeding upon affirmance and the other upon disaffirmance. Moreover, he who rescinds must act promptly. Immediately upon learning the facts he should announce to his adversary that he does not intend to be bound by the terms of the agreement made, and tender back what he has received under it. To maintain rescission at law, he must do this at or prior to the time of the commencement of his action. Due allegation of his acts of rescission should be made in the petition. *Alfree Mfg. Co. v. Grape*, 59 Neb. 777; *Pollock v. Smith*, 49 Neb. 864; *First Nat. Bank v. McKinney*, 47 Neb. 149; *American Building & Loan Ass'n v. Rainbolt*, 48 Neb. 434; *Baker v. Thomas*, 102 Neb. 401; *First Nat. Bank v. Yocum*, 11 Neb. 328; *Symns & Co. v. Benner*, 31 Neb. 593.

Rasmussen v. Hungerford Potato Growers Ass'n.

The rule of practice is too well established to be gainsaid in cases where objection is made, as in the case at bar. It is a most salutary rule, having its basis in truth and natural justice, like unto the one which declares that a litigant cannot plead two causes, the truth of one of which destroys the other. In the instant case the defendant wanted to rescind before any action was brought, and the plaintiff would not. It offered to return him his money, the very thing he now asks for, and call the contract off. To have done so would have saved all the costs of this suit. To have done so would have relieved the company from the payment of $500 on a doubtful mortgage. But plaintiff demanded his deed and insisted on the payment of said mortgage. Not until costs were made and the mortgage paid, not until his case for affirmance of the contract and for damages had been tried, and not until after a considerable interval he was facing the court and jury in a second trial, was plaintiff ready to take what had been offered and what he is now willing to accept. This case differs from *Carson v. Greeley*, 107 Neb. 609, in that plaintiff's election of damages as to remedy resulted in a detriment to the defendant. By his pursuit of another remedy, by his delay, by his failure to take preliminary rescinding steps, the plaintiff destroyed his right of rescission and deprived himself of any recovery on that score. The court is satisfied that in the second trial he proceeded in rescission and that the judgment must be reversed.

But his contention, both in his brief and upon oral argument, was that the action remained an action for damages in which he merely asked for a less amount. Assuming this, and assuming that there was enough in the petition after the amendment to sustain a recovery of damages for fraudulent representations, we have examined the record with care to see if there was evidence to sustain such a recovery. For it is desirable to end litigation already too protracted, and, though one elect a remedy, he cannot be concluded thereby if it be inapplicable and if he has before selected a proper one. But the trouble is that, while there

was abundant evidence to prove an amount to be recovered in rescission, there was none adduced or offered to prove damages for deceit inducing purchase. In rescission the measure of recovery is the amount paid with interest. In damages the measure is the difference between the amount agreed to be paid and the value of the property, had it been as represented. There is no evidence as to that value. No recovery of damages can be predicated upon petition without evidence.

So the decision must be the same. The circumstance of no proof on this necessary point is simply another evidence of intention on the part of the plaintiff to pursue rescission, rather than damages. The plaintiff could have testified as to the value in question; but he was not interrogated.

Obviously we cannot enter judgment in this court dismissing the plaintiff's action. He elected rescission when there was no relief for him in that form of action, but his petition sufficiently stated a cause of action in damages. We make no criticism of the cases cited by appellants on this point, nor is it necessary to discuss them. Applied to the case at bar and given full weight, they are not convincing to the proposition that judgment should here be entered upon the merits in favor of defendants. The contract of purchase was made in Omaha, far distant from the land. Plaintiff had then no opportunity to investigate and was therefore entitled to believe and rely upon what defendants told him in regard to the quality and extent of the property sold. The contract was made then. From that time forth he was entitled to the benefit of it. He denies that he agreed not to hold the defendants on said contract in the conversation in February, 1918. We are of opinion that he is entitled to have his case remanded for a new trial.

REVERSED AND REMANDED.