Argued January 19, modified February 16, rehearing denied March 9, 1926.

WILBUR L. RAYBURN ET AL. v. H. P. NORTON.

(243 Pac. 560.)

Contracts—Party, not Fully Performing His Part of Contract, cannot Retain Benefits and Sue at Law in Damages.

1. One cannot retain benefits of the contract and sue at law for damages where he admittedly failed to perform fully his part of the contract, under rule that a party in default cannot recover on the contract, unless performance on his part has been waived.

Cancellation of Instruments—Contracts—Rescission may be by Subsequent Agreement—Rescission may be by Suit in Equity—Rescission Requires Prompt Action—Rescission Requires Return of Benefits Received.

2. A contract may be rescinded either by a subsequent agreement or by suit in equity and party seeking rescission must act promptly and surrender to offending party all that former has received under the contract so far as possible.

Vendor and Purchaser—Amount to Cover Unpaid Taxes on Property Sold may be Retained by Purchaser Out of Consideration Due.

3. Where there are unpaid taxes on property sold purchaser may retain sufficient from balance of the consideration due to discharge the taxes.

Fraud—Vendor and Purchaser—Suit for Rescission and Damages for Fraud Held Barred by Laches.

4. Retention of possession, by purchaser, of property for nearly five months after discovery of alleged fraud, in representing property to be free from mortgages, and suffering mortgages to be foreclosed without defense, or without calling on vendor to resist foreclosure, constituted laches by purchaser, barring an action to rescind the contract and to recover damages for fraud.

---

Contracts, 13 C. J., p. 600, n. 22, p. 616, n. 94, p. 620, n. 52.

Rescission, 34 Cyc., p. 1423, n. 41, p. 1427, n. 62, p. 1428, n. 63, p. 1434, n. 9, p. 1628, n. 13.

Vendor and Purchaser, 39 Cyc., p. 1355, n. 27, p. 1997, n. 98, 99, 1, p. 2084, n. 60, p. 2086, n. 79.

From Lane: G. F. SKIPWORTH, Judge.

Department 1.

MODIFIED.   REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Potter, Foster & Immel,* with an oral argument by *Mr. O. H. Foster.*

For respondents there was a brief and oral argument by *Mr. H. E. Slattery.*

BURNETT. J.—The parties agree that on January 16, 1922, they entered into a contract in writing in

2.  See 4 R. C. L. 511.
3.  See 27 R. C. L. 542.
4.  See 4 R. C. L. 514.

the following terms, omitting signatures and acknowledgment.

"THIS ARTICLE OF AGREEMENT, made and executed this 16th day of January, 1922, by and between Henry P. Norton, party of the first part, and Wilbur L. Rayburn and Iva B. Rayburn, his wife, parties of the second part.

"WITNESSETH, That the party of the first part for and in consideration of the covenants and agreements herein contained to be well and truly performed by the parties of the second part does hereby agree to convey to said second party by transfer, those certain wheat lands in Alberta, Canada, consisting of 160 acres of land now owned by said party of the first part, being situated about one and one-half miles south of Blackie, in Alberta, Canada; free and clear of all incumbrances except one mortgage of $3000 together with interest thereon, upon the payment to him of the sum of $400 and the performance of the conditions of this agreement on their part, by the parties of the second part.

"And the parties of the second part, for and in consideration of the above covenants and agreements, do hereby agree to assign all of their interest in that certain contract and agreement with the Douglas National Bank of Roseburg, Oregon, whereby they are to obtain title to the property in Roseburg, Douglas County, Oregon, known as the Roseburg Apartments, being on the northwest corner of Main and Douglas Streets, the land conveyed being 120x140 feet, upon the payment of $5000 due to the said Douglas National Bank; said contract calling for title to said property with merchantable abstract, free and clear of all encumbrances upon the payment of said $5000. And the said parties of the second part further agree to pay the party of the first part the sum of $400 as mentioned in paragraph two of this agreement, and the party of the first part agrees to pay a note of $400 made by the parties of the second part to C. F. Baughman, of Eugene, Oregon, and the parties

of the second part agree to pay the interest in this note of $400.''

The complaint avers that in order to induce the plaintiffs to transfer the Roseburg Apartments to him and to pay the additional sum of $400, the defendant represented to them that he was the owner of the 160 acres of land in Canada and had title thereto and that the land was free and clear of all liens and encumbrances except a mortgage of $3,000, which will become due on November 1, 1924. The complaint then contains the following statement:

''That the said statements were false in this, to-wit: That the defendant had no deed nor title to the said 160 acres of land; that there was a mortgage on the said land for the sum of $500 which was long past due, and another mortgage for the sum of $2500 which became due on November 1, 1922; that the said defendant knew that the said statements were false or made them with reckless disregard of the truth; that he made them with the intent to cheat, wrong, and defraud these plaintiffs out of their said property; that these plaintiffs relied thereon and believed the same to be true; and in reliance thereon transferred unto the said defendant their interest in the said Roseburg Apartments, which was of the reasonable market value of $15,000 to their damage in the sum of $15,000.

''That the said defendant placed these plaintiffs in the possession of the said four head of horses and the said 160 acres of land during the Spring of 1922, but never conveyed the said land unto them at any time; that thereafter these plaintiffs discovered the facts to be that the said defendant's said representations were false; that he did not own the said land; that the said two mortgages were thereon; and that there was about $200 delinquent taxes against the said 160 acres of land.

''That, upon the discovery of the said fraudulent representations of the defendant, these plaintiffs

rescinded the said contract, vacated the said land and surrendered the possession of the said four horses and said 160 acres of land to the said defendant.''

On account of all this the plaintiffs allege they were damaged in the sum of $15,000.

An additional cause of action related to an alleged trade by the plaintiffs of an automobile and a timber .contract for a tractor, in which, although the plaintiffs delivered the automobile and transferred the contract, the defendant failed to transfer or deliver the tractor, whereby the plaintiffs claim damages in the sum of $2,000.

As to the first cause of action the answer admits the execution of the contract and the transfer to the defendant by assignment of the Roseburg Apartments, described in the contract, otherwise the allegations of the first count are denied. Further defending as to the first cause of action the defendant avers among other things that the plaintiffs entered into possession of the Canadian land, cultivated and raised a crop thereon of the reasonable value of $1,300, and continued in possession until some time in the fall of 1922, when they abandoned the premises, and that at no time did the plaintiffs rescind or attempt to rescind the contract. The answer also avers that the plaintiffs have never paid the $400 or offered to pay the same as required by the contract. He says that at all times, at the date of the contract and since, the defendant was the owner of the Canadian land and in position to make a transfer thereof to the plaintiffs upon payment of the $400 mentioned in the contract.

The second cause of action is denied by the answer except as further stated in that pleading, which alleges that the defendant, in the spring of 1922, traded to the plaintiffs four head of horses for the

automobile mentioned in the complaint, and that each took possession of the exchanged property. It is stated further in the answer in substance that the plaintiffs agreed to trade a contract between one of them and one Norwood for the sale to the latter of some timber growing on a certain tract of land in Lane County, in exchange for which the defendant was to deliver to the plaintiffs a tractor and power plow outfit, but it transpired that the plaintiffs did not own the wood and had no lawful right nor authority to convey the same; that it was encumbered by two mortgages; one of $2,500 and the other of $500, and that the defendant was notified by the owner of the title and of the mortgages not to remove the timber, on account of all which the defendant refused to deliver the tractor to the plaintiffs. The new matter in the answer is traversed by the reply. The trial resulted in a judgment and verdict for the plaintiffs, and the defendant has appealed.

No attack is made by the defendant upon the result of the action as to the second count in the complaint. The sole contention presented in the brief is thus worded:

"The amended complaint, as to the first cause of action, fails to state facts sufficient to constitute a cause of action; the motion of appellant for a judgment of nonsuit should have been granted, and the motion for a directed verdict as to the first cause of action should have been allowed."

Without dispute the testimony shows that the plaintiffs have never paid or offered to pay to the defendant any more than $100 of the $400 required by the contract to be paid. It further appears that as early as June, 1922, the plaintiffs ascertained that there were two mortgages, aggregating $3,000 on the place, one of which was past due, and that there were

taxes due upon the lands, notwithstanding which they continued to farm the premises into which they had entered by consent of the defendant in part performance of the contract, and remained there in possession, harvested the crop, staying until October 18, 1922, when they vacated the premises. In brief, they had full knowledge of the alleged fraud by the early part of the month of June, yet did nothing looking towards a rescission of the contract until the 18th of October, when they abandoned the premises, and later, on January 5, 1923, commenced this action.

It is possible that after verdict the complaint is sufficient as to its allegation about rescission, as follows:

"That upon the discovery of the said fraudulent representations of the defendant, these plaintiffs rescinded the said contract, vacated the said land and surrendered the possession of the said four horses and said 160 acres of land to the said defendant."

We proceed, therefore, to consider the question about the motion for nonsuit. It is said in 39 Cyc. 1997:

"One who has been induced by fraudulent representations to become the purchaser of property has, upon the discovery of the fraud, three remedies open to him, either of which he may elect: He may rescind the contract absolutely and sue in an action at law to recover the consideration parted with upon the fraudulent contract; he may bring an action in equity to rescind the contract and in that action have full relief; lastly, he may retain what he has received and bring an action at law to recover the damages sustained."

Here is set down, also, the oft-quoted precept contained in *Scott* v. *Walton*, 32 Or. 460, 52 Pac. 180:

"A party who has been induced to enter into a contract by fraud, has, upon its discovery, an election of remedies. He may either affirm the contract, and sue for damages, or disaffirm it, and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting further developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract." Citing several precedents.

1. The plaintiffs have undertaken to rescind the contract and recover damages for the fraud which they allege has been practiced upon them. They are not in a position to avail themselves of the third situation described in the excerpt from 39 Cyc., *supra,* because they had confessedly not performed fully the contract on their part, in that they had not fully paid the sum of $400 which they had agreed to pay concurrently with the delivery of the conveyance of the Canadian land. This is upon the principle that no party to a contract can recover upon the same when he is himself in default as to performance, unless performance upon his part has been waived by the opposite party. The plaintiffs therefore necessarily are limited to one of the other two remedies. It is plain that they have not proceeded in equity. The remedy they have employed is to rescind the contract and recover damages. It is a case where the parties plaintiff are proceeding upon a rescission dic-

tated by themselves. In order to prevail they must get the contract out of the way, else it would be an obstacle in their path because they themselves have not fully performed it. Hence their necessity to rescind.

2. A contract may be rescinded in the precise sense of the word either by a subsequent agreement of the parties or by a suit in equity commenced by one of them upon sufficient grounds. Rescission by a party is somewhat an abuse of terms. It is more properly characterized by some authors as a withdrawal from the contract by the party who is depending upon a breach upon the part of the other contracting party. In pursuit of this remedy of so-called rescission by one of the parties, it is incumbent upon the plaintiff to act promptly and without delay and to surrender to the offending party all that the former has received under the contract, so far as it possibly can be done. As said in 2 Black on Rescission and Cancellation, Section 616, speaking of this subject:

"The rule that he who seeks to rescind a contract of sale must first offer to return the property received, and place the other party in the position he formerly occupied, so far as practicable, prevails equally at the civil and the common law. It is a rule founded in natural justice, and requires that the offer shall be made by the purchaser to his vendor upon the discovery of the defects for which the rescission is asked. The vendor may then receive back the property and be able by proper care and attention to preserve it, or he may have recourse upon other parties, the remedies against whom might be lost by delay. He must be permitted to judge for himself what measures are necessary for his interest and protection, and if the purchaser by delay deprives him of the opportunity of thus protecting

himself, he cannot demand a rescission of the contract.''

3, 4. Complaint is made by the plaintiff that there were unpaid taxes upon the premises, yet under the authority of *McCourt* v. *Johns*, 33 Or. 561, 569 (53 Pac. 601), the plaintiffs could have retained sufficient of the balance of the consideration due from them to have discharged the taxes. By retaining possession of the land and suffering foreclosure of the mortgages without defense, so far as appears in the record, and certainly without calling upon the defendant to resist such foreclosure, the plaintiffs have been guilty of laches, forbidding their recovery under the authorities already cited. If they desired to rue the bargain that they had made, it was their duty to act promptly upon the discovery of the alleged fraud. Not having done so they were in no position to call upon the defendant for damages as laid in this action.

The motion for nonsuit as to the first cause of action should have been sustained. No question against the validity of the judgment on the second causes of action having been presented by the brief for the defendant we assume that all cavil about it is waived. Hence the judgment will be modified by reversing the same as to the first cause of action only.                MODIFIED.    REHEARING DENIED.

McBRIDE, C. J., and COSHOW and BEAN, JJ., concur.