GEORGE W. PLATNER, APPELLANT, V. DEWITT ELLINGWOOD ET AL., APPELLEES.

FILED JULY 29, 1932. No. 28281.

*Johnson, Rine & Marshall*, for appellant.

*Howard Saxton* and *John E. Eidam*, contra.

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and DICKSON and TEWELL, District Judges.

TEWELL, District Judge.

This action was begun to foreclose a contract for the sale of real estate. The plaintiff, George W. Platner, appellant, entered into a contract in writing under date of June 3, 1929, with the defendant Dewitt Ellingwood, hereinafter designated as Ellingwood, one of the appellees herein, whereby the plaintiff agreed to sell and convey to Ellingwood lots 7, 8, and 9, in block 7, Cedarnole, an addition in Douglas county, Nebraska. By the contract Ellingwood agreed to pay Platner the sum of $13,230.72, payable $1,000 in cash on the date of the contract, $4,230.72 by agreeing to pay the unpaid balance of a debt secured by a first mortgage to the defendant Omaha Loan & Building Association, hereinafter called the association, and the balance of $8,000 by delivering to Platner within a period of three years, at such times and in such quantities as Platner should later designate, sand, sand-gravel or road-gravel, at the market price at various times of delivery as quoted by Lyman-Richey Sand & Gravel Company, until such sum of $8,000 had been paid. The debt to the association was payable in monthly payments of $45 a month, and payments by Ellingwood were to begin on June 15, 1929. The contract provided that Ellingwood should pay taxes for the year 1929 and subsequent years, take immediate possession, and keep the property insured, and that Platner should give deed and abstract of title when the consideration was fully paid. Provision is made in the contract to the effect that, if the vendee fails or refuses to make deliveries of the sand and gravel, he may either pay the unpaid portion of the said sum of $8,000 in cash or by monthly payments of $80 a month, in which latter event the unpaid balance should draw interest at 6 per cent. per annum, due at stated times. A clause is contained in the contract to the effect that if the vendee fail to perform he shall forfeit his rights in the property, and that if he fail to make the payments the whole amount of the unpaid principal shall become due. Platner, vendor in the contract,

brought this action and made Ellingwood, Ellingwood's wife, Eleanor, and the association defendants. Ellingwood and his wife filed a joint answer to the plaintiff's petition, in which they admit the execution of the contract, deny default on the part of Ellingwood, and allege that on September 22, 1930, the plaintiff refused to accept any further deliveries of sand or gravel, and that Ellingwood thereupon rescinded said contract and orally tendered the property back to the plaintiff. Said answer further pleads that Ellingwood was induced to enter into said contract through false and fraudulent representations of the plaintiff, the representations alleged to have been made being that the residence on said lots "was well built, was a good house and would make Ellingwood a good home." It is further alleged in the answer that, prior to the execution of the contract, a fire occurred in the basement of the residence upon the property involved, and so weakened the subfloor and floor joists immediately above the basement as to cause the house to settle, the floors to become unlevel, and several doors uncloseable, and that all evidence of fire had been hidden by lining the basement with plaster-board, and that Ellingwood did not discover the fact that such fire had occurred until just before September 22, 1930. Ellingwood prays for judgment against the plaintiff for $1,000 paid in cash upon the contract, $1,079.42 for sand and gravel delivered under the contract, $308.74 paid to the association and $143.81 paid for permanent improvements upon the items of upkeep of the property, or a total of $2,531.97, and tenders return of the property on condition that such sum is paid to him. Neither by answer, evidence nor by offer at the trial does Ellingwood offer to account for the value of his use and occupancy of the property. The allegations relative to defects in the house and concealment of evidence of the fire are pleaded in such manner as to cause them to be a statement of why the representations above mentioned were false and of why Ellingwood did not sooner discover the fact that such fire had occurred, and are not made a part of an action for fraudulent concealment.

The trial court found that rescission of the contract had been had, and that Ellingwood had paid under the contract $1,000 in cash to plaintiff, $917.90 by delivery of sand and gravel and $308.74 in cash to the association, or a total of $2,226.64, and that plaintiff should be allowed $70 a month for twenty-nine and one-half month's use of the property, or a total of $2,065, leaving a balance in favor of Ellingwood of $161.64. Ellingwood was denied recovery of the item of $143.81 above referred to and given until December 1, 1931, to vacate the property. Judgment was rendered in favor of Ellingwood for the sum of $161.64 and the association was decreed to have a first lien in the sum of $3,452.17. Platner appeals.

The evidence discloses that the defendants Ellingwood made their private home in the premises from immediately after the date of the contract to the date of the trial, and that sand and gravel were delivered at various times under the contract from soon after the date of the contract up to and including September 19, 1930, the total price of all deliveries being $1,915.85. Schellberg Sand & Gravel Company obtained a judgment against the plaintiff for the purchase price of a portion of the sand and gravel that had been delivered to plaintiff by Ellingwood and credited upon the contract, and plaintiff paid in satisfaction thereof $997.93, leaving a balance of $917.92 as the amount paid by delivery of sand or gravel. No taxes on the property were ever paid by Ellingwood. Platner paid taxes assessed in 1929. A fire occurred in the basement of the house in August, 1926, and plaintiff had had the same repaired by a contractor at a cost of about $2,500. The plaintiff, and also the tenant, Mr. Henderson, who was living in the house on the date of the contract, and Mr. Keener, an employee of the plaintiff at the time of the sale, each testify that Ellingwood was told of the fire prior to the execution of the contract. Ellingwood denies knowledge of the fire prior to August 4, 1930, when he claims to have discovered it through an incident that occasioned removal of a part of the plaster-board in the

basement. After August 4, 1930, Ellingwood continued delivery of sand and gravel under the contract to as late as September 19, 1930. On September 22, 1930, the plaintiff wrote Ellingwood a letter in which he refused to accept any more sand and gravel, giving as a reason that the quality was unmarketable. The quality of the sand and gravel had been a subject of complaint by the plaintiff to Ellingwood for some time prior to the date of this letter. A letter by the plaintiff to defendant on August 26, 1930, and one of September 5, 1930, complain of failure of defendant Ellingwood to make deliveries. Ellingwood testifies that a day or two after the receipt of the letter of September 22, 1930, he called the plaintiff by telephone and said to him: "You don't think my material is any good, and I don't think your house is any good, and as long as you want to rescind on my contract I will rescind, and all you have to do is to give me what I paid in this, and pay me for my gravel and I will move out." The letter of September 22, 1930, makes no mention of rescission, but states: "You will have to find some other way to take up your obligation with us." The statement above quoted is the only act that Ellingwood is shown to have done toward rescinding the contract prior to the filing of his cross-petition. After August 4, 1930, he collected upon an insurance policy for a storm damage to the property. He inspected the house prior to making the contract. Both he and Platner had lived in Omaha a long number of years. A preponderance of the evidence shows that at least some of the sand and gravel furnished plaintiff under the contract was unfit for the uses contemplated by the parties at the time of making the contract. After receipt of the letter of September 22, 1930, Ellingwood made no offer to deliver sand or gravel of such quality as to comply with the contract, and at the time of such receipt he himself was in default at least in the payment of taxes on the property.

To arrive at the conclusion reached in this case, it is not necessary to determine whether or not the representa-

tions to the effect that the house was a good house, well built and would make the Ellingwoods a good home may be made the basis of an action to rescind on account of fraud having induced the contract. It is unnecessary to determine whether or not such representations were made, and, if made, whether or not they were false, or whether or not the defendants relied thereon, or were damaged thereby. It is unnecessary to determine whether or not the evidence would sustain a finding to the effect that fraudulent concealment induced the contract. It is likewise unnecessary to determine whether or not the plaintiff breached such a dependent covenant of the contract in refusing to accept further deliveries of sand as to allow Ellingwood to rescind for breach of a dependent covenant, he being at the time of such breach himself in default. Whether the right of one party to a contract to rescind the same be on account of fraud having induced the contract, or on account of a breach by the other party of a dependent covenant, such right is barred by failure for an unreasonable time after knowledge of the facts giving rise to such right to declare a rescission and disclaim the benefits of the contract. After Ellingwood, according to his own testimony, had discovered all facts giving rise to the alleged fraud on August 4, 1930, he made about twenty-five deliveries of sand or gravel under the contract, and collected upon a policy of insurance upon the property for damages done by a storm, and after receipt of the letter of September 22, 1930, continued to live in the property as his own. He was still living in it at the time of the trial, and then only tendered its return in his answer on condition that the plaintiff pay a greater sum of money than would be due had rescission been accomplished and had the value of the use of the property for which he has never offered to account been disregarded. If the right to rescind ever existed in Ellingwood upon either of the grounds above mentioned, points we need not decide, it was waived prior to the commencement of this action.

The evidence does not show how many payments the plaintiff paid to the association after the date of the contract, but does show that the full principal of the debt to it is not paid. Upon the defendant's default, the plaintiff merely debted Ellingwood with the unpaid portion of the amount due the association, and claims the amount due him is the same amount that would be due if he had paid the association. Ellingwood must be given the right of redemption, and protection in securing a good title in case he redeems. The parties to the contract contemplated that in case the plaintiff was paid in full he would convey subject to any unpaid balance of the debt to the association. The contract does not specifically provide to the contrary. It makes no provision for interest upon the item of $8,000 so long as such item is paid by deliveries of sand and gravel.

For the reasons above stated, the decree of the trial court is reversed and this cause remanded, with directions to allow the plaintiff to make pleading and proof of the number, dates and amount of his payments to the association and for taxes, and to enter a decree in favor of the plaintiff against the defendant Dewitt Ellingwood for the difference between the sum of $8,000 and the sum of $917.92, with interest on such difference at 6 per cent. per annum from September 22, 1930, plus the total of the payments by plaintiff to the association and for taxes, with interest on each of such payments from its date to the date of such decree at 6 per cent. per annum, such decree further to provide for a sale of said property to satisfy the amount due, if redemption is not made within twenty days from the entrance of such decree, and to further determine the amount due the association on the date of such decree, and to provide that, if redemption is made by payment into court, the plaintiff shall not be entitled to withdraw the redemption money until proper deed and abstract is furnished.

REVERSED.