SALVATORE CARUSO, APPELLANT, v. WALTER MOY ET AL., APPELLEES.

81 N. W. 2d 826

Filed March 15, 1957. No. 34055.

*Martin A. Cannon, Jr.,* and *Matthews, Kelley & Delehant,* for appellant.

*Hotz & Hotz,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Douglas County. Salvatore Caruso brought an action in the district court against Walter Moy and Anna Moy for the purpose of having declared void a contract for the purchase of a restaurant by him from the Moys on the ground that the Moys induced him to enter into the contract by fraud. The trial court denied plaintiff the relief he prayed for, that is, that the defendants be required to return to him all money he had paid defendants on the purchase price, and dismissed his petition. His motion for new trial having been overruled, plaintiff took this appeal therefrom.

This is an action in equity for the rescission of a contract for the sale of a restaurant business. The action, being equitable in character, is triable de novo. See, § 25-1925, R. R. S. 1943; Russo v. Williams, 160 Neb. 564, 71 N. W. 2d 131. We shall apply the usual principles applicable in such cases. These principles have been stated by this court so often that no useful purpose would be served by restating them.

On October 13, 1954, appellant entered into an agreement with appellee Walter Moy, whom we shall hereinafter refer to as Moy, for the purchase of a restaurant owned by Moy located at 2219 Military Avenue in the city of Omaha known as the "Ming Toy Cafe." The building in which it was located was owned by Mrs. Frank Tribulato. The restaurant was of a family type, with a dining room capacity for about 175 patrons, and served American-Chinese foods. Appellees had been successfully operating it for some 12 years.

The consideration for the purchase of the restaurant was $18,000. Appellant paid $8,000 of this amount in cash at the time of purchase, obligated himself for $8,768 thereof by giving an installment note to Moy secured

by a chattel mortgage upon the furniture and fixtures in the restaurant, and for the rest assumed and agreed to pay the balance of $1,232 owing on the air-conditioner in the restaurant. The latter was payable at the rate of $56 per month. In addition to the foregoing purchase price appellant assumed the lease obligation for the premises in which the restaurant was located, which was $300 per month. The lease appellee Moy had on the premises was for 5 years and expired on June 16, 1957. Appellant went into immediate possession. He thereafter operated the business as an American-Italian restaurant. He did so until November 1, 1955, when he was closed by the Omaha-Douglas County Health Department. However prior thereto he had started this suit, doing so on August 9, 1955.

The fraud complained of by appellant is set forth in his petition as follows:

"III In order to induce plaintiff to purchase said business and lease said premises, defendants and each of them represented to the plaintiff that the said restaurant was in good condition, and particularly represented to the plaintiff that the condition of the said restaurant was satisfactory to the Omaha-Douglas County Health Department. In this connection defendants displayed to the plaintiff a current operating permit from the said Department, and certified that the restaurant was satisfactory as recited therein.

"IV The said representations were in fact false as said defendants well knew; the said restaurant was not in good condition and defendants had, in August of 1954, by the said Health Department, been advised that the said permit would not be renewed in 1955 unless extensive repairs and replacements were made therein, and had enumerated among other, the following deficiencies to defendants: 1. The dishwashing system had an inadequate hot water supply. 2. The stove had an unsatisfactory venting system. 3. The kitchen floor was of unsatisfactory material. 4. The kitchen walls and

ceiling were improperly painted. 5. The air conditioner drained into the men's restroom rendering said room unsatisfactory. 6. The kitchen lighting and ventilation were unsatisfactory. In addition to the foregoing the plumbing and water pipes in said restaurant were old and rusty with numerous leaks and required extensive repairs and the roof leaked water onto the stove.

"V All of said defects and the prospective cancellation of the said permit were known to the defendants, and each of them, at the time they induced plaintiff to purchase said business and lease said premises. Defendants fraudulently refrained from disclosing said defects to the plaintiff but made the false representations aforesaid to the plaintiff to induce him to purchase and lease said property. Had plaintiff known of said defects or the falsity of defendants' representations he would not have purchased said restaurant and he relied upon the truthfulness and completeness of the defendants' false representations and was thereby induced to purchase the said business and lease said premises."

We said in Russo v. Williams, *supra:* "A party who has been induced to enter into a contract by fraud has, upon its discovery, an election of remedies. He may either affirm the contract and sue for damages or disaffirm it and be reinstated to the position he was in before it was consummated. Rayburn v. Norton, 117 Or. 328, 243 P. 560."

As stated in 55 Am. Jur., Vendor and Purchaser, § 593, p. 986, and cited in Russo v. Williams, *supra,* with approval: "* * * equity may decree cancellation or rescission of a contract for fraud or misrepresentation constituting an inducement to its execution, especially when the legal remedy is inadequate, or the equitable relief by way of cancellation is more complete."

"Fraud is never presumed, but must be established by the party alleging it by clear and satisfactory evidence." Russo v. Williams, *supra.*

"The general rule that fraud is not presumed, but must

be proved by the party who alleges it, does not mean that it cannot be otherwise proved than by direct and positive evidence. Fraud in a transaction may be proved by inferences which may reasonably be drawn from intrinsic evidence respecting the transaction itself, such as inadequacy of consideration, or extrinsic circumstances surrounding the transaction." Trebelhorn v. Bartlett, 154 Neb. 113, 47 N. W. 2d 374.

"To maintain an action for rescission because of false representations the party seeking such relief must allege and prove what representations were made; that they were false and so known to be by the party charged with making them or else were made without knowledge as a positive statement of known fact; that the party seeking relief believed the representations to be true; and that he relied and acted upon them and was injured thereby." Russo v. Williams, *supra.*

"Where fraud or misrepresentation is material with reference to a transaction subsequently entered into by a person deceived thereby, it is assumed in the absence of facts showing the contrary that it was induced by the fraud or misrepresentations." Pasko v. Trela, 153 Neb. 759, 46 N. W. 2d 139.

"Fraud may consist in words, acts, or the suppression of material facts with the intent to mislead and deceive." Pasko v. Trela, *supra.*

As said in Restatement, Contracts, § 470, p. 890, and cited in Pasko v. Trela, *supra,* with approval: "(1) 'Misrepresentation' in the Restatement of this Subject means any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts."

" 'One of the essential elements of fraud practiced by means of false representations is that the representation must be concerning a matter material to the contract.' Linch v. Carlson, *supra* (156 Neb. 308, 56 N. W. 2d 101)." Russo v. Williams, *supra.*

As said in Restatement, Contracts, § 470, p. 890, and

cited in Pasko v. Trela, *supra,* with approval: "(2) Where a misrepresentation would be likely to affect the conduct of a reasonable man with reference to a transaction with another person, the misrepresentation is material, except as this definition is qualified by the rules stated in § 474." The qualification has no application here.

As stated in 23 Am. Jur., Fraud and Deceit, § 144, p. 945, and cited with approval in Pasko v. Trela, *supra:* "The mere fact that one makes an independent investigation or examination, or consults with others, does not necessarily show that he relies on his own judgment or on the information so gained, rather than on the representations of the other party, nor does it give rise to a presumption of law to that effect. If, under the circumstances, he is unable to learn the truth from such examination or investigation or, without fault on his part, does not learn it and in fact relies on the representations, he is entitled to relief, all other ingredients of liability being present. It is well settled that where the representee makes only a partial investigation, relies in part upon the representations, and is deceived by such representations to his injury, he may maintain an action for such deceit or secure appropriate equitable relief. Furthermore, no right is affected by an investigation which confirms the representations."

However, "The rescission of a contract must be in toto and the parties must be placed in status quo so far as the circumstances will permit." Bennett v. Emerald Service, Inc., 157 Neb. 176, 59 N. W. 2d 171.

We shall, for the purpose of what is hereinafter said, assume the allegations of appellant's petition are true and that, under the principles hereinbefore stated, they would constitute valid grounds for rescission. However, it should be understood we do not so hold. The question is, can appellant maintain such an action under the circumstances established by the evidence adduced?

Basically, as stated in Russo v. Williams, *supra:* " 'It

is a general and well-established rule that there can be no rescission of a contract unless the parties can be placed in statu quo or substantially so.' Perry v. Meyer, 110 Neb. 347, 193 N. W. 717." See, also, Bennett v. Emerald Service, Inc., *supra.*

We said in Russo v. Williams, *supra:*

" 'Whether the right of one party to a contract to rescind the same arises on account of fraud inducing the contract or on account of a breach by the other party of a dependent covenant, such right is barred by failure of the one party, for an unreasonable time after knowledge of the facts giving rise to such right, to declare a rescission and disclaim the benefits of the contract.' Platner v. Ellingwood, 123 Neb. 719, 243 N. W. 896. See, also, Sipola v. Winship, *supra* (74 N. H. 240, 66 A. 962); Rayburn v. Norton, *supra;* Rasmussen v. Hungerford Potato Growers Assn., 111 Neb. 58, 195 N. W. 469.

" 'If the purchaser has knowledge of the grounds upon which he is entitled to rescind, an unreasonable delay upon his part, especially if accompanied by such change of circumstances as makes it impracticable for him to place the vendor in statu quo, or by such acts or conduct on the part of the purchaser as constitute waiver, prevents him from exercising his right to rescind. Even where time is not of the essence of the contract, a purchaser may still lose his right to rescind by delaying action to a time, which under the circumstances, is unreasonable.' 66 C. J., Vendor and Purchaser, § 476, p. 824.

" 'The question whether laches exists in a particular case depends upon its own peculiar circumstances and is addressed to the sound discretion of the court, the question of the unreasonableness of the delay depending largely upon the nature of the property in the particular case.' 66 C. J., Vendor and Purchaser, § 477, p. 825."

And in Rasmussen v. Hungerford Potato Growers Assn., 111 Neb. 58, 195 N. W. 469: "* * * he who rescinds

must act promptly. Immediately upon learning the facts he should announce to his adversary that he does not intend to be bound by the terms of the agreement made, and tender back what he has received under it. To maintain rescission at law, he must do this at or prior to the time of the commencement of his action. Due allegation of his acts of rescission should be made in the petition."

While we think appellant's petition was deficient, and did not state a cause of action in rescission, we shall here consider it as if it did as the case was apparently tried on that theory. Appellant adduced evidence to the effect that on August 13, 1954, the appellees were advised by an inspector of the Omaha-Douglas County Health Department that they would have to make certain changes in their restaurant, consisting of putting in a new floor in the kitchen, installing adequate new dishwashing facilities, and installing a new ventilating system in the kitchen, if their restaurant was to be permitted to continue to operate; that appellees did not comply with these requirements but advertised and sold the restaurant to appellant without advising him thereof; that on June 20, 1955, appellant was advised of these requirements by the health department but did not know the appellees had also been so advised until July 1955; and that he brought this action on August 9, 1955. Although he brought this action on August 9, 1955, the record does not establish the fact that he ever tendered the restaurant to appellees or either of them. In fact the record shows he continued to operate the restaurant after he brought the action and refused to turn it over to appellees after it was closed on November 1, 1955, by the health department, keeping possession thereof until November 15, 1955, to which date appellant had paid the rent. Appellant then took the keys to the restaurant to appellees' home and gave them to Moy saying, "I finished, I give you keys." Under this situation we do not think appellant is entitled to a re-

scission because he held and operated the restaurant for too long a period after he knew of what he now claimed was fraud. He should not only have brought the action but should have tendered the restaurant to appellees Moy. No place in his petition nor in his evidence does he say that he ever did so.

There is another reason why rescission should not be allowed. Appellant took over the restaurant as a prosperous and going enterprise dealing in American-Chinese foods. He changed the bill of fare to American-Italian, made some substantial changes in the restaurant itself, and called it "Caruso's." He and his family, completely inexperienced, tried to run it. Due to poor housekeeping and many other causes the business gradually fell off until in October 1955, the last month it was operated, it was less than half of what it had formerly been. The record establishes that the appellees could not be placed in status quo, in fact, when they obtained possession on November 15, 1955, the business had been closed for over 2 weeks and the fixtures and furnishings therein were in poor condition. To require appellees, under such circumstances, to take back the restaurant and return to appellant all payments they had received from him would permit the appellant to perpetrate a fraud on them for appellant kept possession thereof just as long as he could, long after he knew of what he now claims was fraud. He did this by getting extensions of time from the health department in which to meet its requirements, although apparently never intending to comply therewith. Finally the health department realized that fact and thereafter refused to extend the time and, as of November 1, 1955, closed the restaurant.

Appellant seems to think he should be entitled to recover because he was permitted to amend his petition at the time of the trial to the effect that, "All of said property and premises have been returned to defendant." We have already stated when and the conditions under which Moy accepted the keys to the restaurant. At

that time it was closed, the condition of the premises was bad and needed care, the time of the year required the premises to be heated in order to protect the fixtures and furnishings from being damaged by freezing, and the appellees were personally liable on the lease and conditional sales contract covering the air-conditioning. Under this situation and these conditions the appellees had a perfect right to take possession of the property in order to protect their interests, as the chattel mortgage provided they could, and go in and open up the business.

Appellant endeavored to show, on a hearing relating to a second motion for new trial, that appellees had, subsequent to trial, made the changes required by the health department. In view of what we have held we do not think that fact material. Whether or not appellant has a good cause of action at law for damages we do not here decide. However, considering the nature of the items required, and the cost of installing them, we think appellant had and has an adequate remedy at law if he has actually been defrauded and damaged thereby. It is not a factual situation such as was presented in Russo v. Williams, *supra*, where we came to the conclusion the facts entitled the appellants therein to some form of relief in that action.

In view of the foregoing we have come to the conclusion that the judgment of the trial court should be affirmed.

AFFIRMED.

CHAPPELL, J., participating on briefs.