FREDRICK P. WEGNER ET AL., APPELLANTS, V. LOYD WEST, APPELLEE.

100 N. W. 2d 542

Filed January 8, 1960. No. 34661.

*George F. Johnson, Mark J. Ryan*, and *Arthur L. Burbridge*, for appellants.

*Roscoe L. Rice, Frederick M. Deutsch*, and *William I. Hagen*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in equity by Fredrick P. Wegner and Ferol H. Wegner, plaintiffs and appellants, against Loyd West, defendant and appellee, for the rescission of contracts, or in the alternative for damages, which contracts it is alleged were entered into as the result of fraudulent inducements and representations of the defendant. The case was tried to the court at the conclusion of which a decree was rendered denying any relief to the plaintiffs. Motion for new trial was duly filed and overruled. From the decree and the order overruling the motion for new trial the plaintiffs have appealed.

In order that there may be an understanding of what is presented by this appeal it has become necessary by analysis rather than by summary to seek to define the issues. The condition of the pleadings and proceedings makes this necessary.

On or about April 16, 1954, the plaintiffs and the defendant entered into a written contract whereby the plaintiffs agreed to sell to the defendant their home in Creighton, Knox County, Nebraska, for $15,000, payable $2,000 on the delivery of the agreement, $5,000 on May 1, 1954, and $8,000 on August 1, 1954, with possession to be given on August 1, 1954.

On or about April 12, 1954, the defendant entered into a contract with the plaintiffs for the sale to them of certain real estate and personal property in the city of Bonesteel, South Dakota, for $9,980, payable $500 on the execution of the contract and the balance in monthly payments of $120 each. Interest was chargeable at 8

percent on delinquent payments. Some of the personal property consisted of structures on leased real estate. All of the property described in the contract was used and occupied by the defendant in what has been described as his lumber business in Bonesteel, South Dakota. It did not include, in fact it specifically excluded, the stock and materials used in the lumber business.

On or about July 25, 1954, an agreement supplemental to this one was entered into. The only matter of importance in this is that possession of the personal property was to be given August 15, 1954. The other obligations of the agreement were to remain the same.

It appears that transfers were consummated pursuant to the contracts. However the amount of cash or credit passing to the plaintiffs was reduced by liens upon which they were obligated.

These formal contractual transactions were related to an oral arrangement whereby the plaintiffs were to enter upon, take over, and operate the lumber business which was being operated by the defendant. This further arrangement involved taking over by plaintiffs of certain equipment not classed as merchantable articles and the stock of merchandise on hand for the purpose of sale. It appears that this equipment was of the value of about $1,000. It does not appear to be an item of dispute.

An inventory was taken of the merchandise in July of 1954 and the inventory value at that time was $29,020.01. On the basis of this inventory and the written agreements the plaintiffs took over the properties and the business on July 26, 1954, and thereafter operated it as their own.

The plaintiffs in their pleadings, on the trial of the case in the district court, and on the presentation to this court on appeal have treated all of these transactions as parts and incidents of a single contractual arrangement which in toto they have sought by declaration in the petition to rescind.

On or about February 19, 1958, the plaintiff Fredrick P. Wegner notified the defendant of his intention to rescind "the agreement to purchase the plant and the inventory." This was renewed on or about March 3, 1958. On or about July 1, 1958, the plaintiffs closed down the business at Bonesteel, South Dakota.

On July 17, 1958, the plaintiffs filed their petition in this action in which they prayed for "a rescission of the entire agreement of the parties covering the plant, inventory, and Wegner home." They prayed further that "in the event a rescission be not granted, the court retain jurisdiction of the matter and award the plaintiffs damages for fraud." The propriety of this alternative application for relief is not brought into question.

The pleaded basis for rescission as well as for damages was false and fraudulent representations made by the defendant to the plaintiffs on which they relied to their detriment and damage.

By answer the defendant denied generally all of the allegations of the petition. He pleaded further that the plaintiffs were guilty of laches and were on that account in no position to place the defendant in status quo. The general denial of course puts in issue the question of whether or not the acts of plaintiffs were sufficient to accomplish rescission, or to entitle them to damages.

The district court by its decree did not pass directly upon the question of sufficiency of acts to accomplish rescission, but simply found there was no fraud and dismissed the action.

The case, as pointed out, is an action in equity. It therefore becomes the duty of this court to try it de novo on the record and to reach an independent conclusion. See, Mullikin v. Pedersen, 161 Neb. 22, 71 N. W. 2d 485; Wilkie v. Banse, 166 Neb. 138, 88 N. W. 2d 181.

Basic in the determination of the case are the questions of whether or not there was within the true meaning of the term what amounted to a rescission, and

whether or not on the facts there was a right of rescission. Following are some pertinent definitive legal principles.

A rescission is not effective unless the parties to the contract are placed in status quo so far as the circumstances permit. See, Bennett v. Emerald Service, Inc., 157 Neb. 176, 59 N. W. 2d 171; Caruso v. Moy, 164 Neb. 68, 81 N. W. 2d 826.

Ordinarily in rescission a formal tender of property is not required if it appears that it would have been futile, however, a tender may not be regarded as valid, even if it appears that at the time it was made it would have been futile, if there was not a present ability to make the tender good. See Bennett v. Emerald Service, Inc., *supra*.

Numerous important principles relating to the right of rescission are considered in the opinion in Russo v. Williams, 160 Neb. 564, 71 N. W. 2d 131, with authoritative citations. One of these is that a party to a contract may not rescind a contract on account of fraud or misrepresentation, or on account of breach by the other party, if for an unreasonable time after knowledge of the facts giving rise to the right he fails to declare a rescission and to disclaim the benefits of the contract.

It is there further pointed out that the question of whether or not there has been unreasonable delay depends upon the particular circumstances disclosed. This question is one which is addressed to the sound discretion of the court.

It is also pointed out therein that rescission by its nature implies the extinction of the contract which leaves the parties without a recovery upon it.

The following rule is stated in Caruso v. Moy, *supra*: "The rescission of a contract must be in toto and the parties must be placed in status quo as far as the circumstances will permit."

In Einot, Inc. v. Einot Sales Co., Inc., 154 Neb. 760, 49 N. W. 2d 625, the following principles are set forth:

"Where a party to a contract, with full knowledge of the facts and with knowledge of a breach by the other party, receives money in the performance of the contract the breach will be deemed to have been waived.

"The assertion of the rescission of a contract is nullified by the subsequent acceptance of benefits growing out of the contract claimed to have been rescinded.

"The acceptance of the benefits of a contract after breach whether before or after action is commenced to enforce a forfeiture waives the forfeiture."

An examination of the record in the light of the cited principles points first to the question of whether or not there was ever a recognizable rescission of the agreement and transactions which plaintiffs make the basis of the action. If there was a rescission it must flow, first, from the following which is a part of a letter from the plaintiff Fredrick P. Wegner to the defendant dated February 19, 1958, and designated as exhibit No. 8: "* * * you are hereby notified that it is my intention to rescind the whole deal and by that I mean the agreement to purchase the plant and the inventory, and I hereby tender back to you immediately everything which I received from you as a result of our deal. That which I can not return, I will pay you the value of. If you are willing to agree to a rescission, I am willing to attempt to work it out with you, otherwise it will have to be settled in court"; second, the acts and conduct of the plaintiffs after February 19, 1958, including the incidents occurring at the trial; and third, the contents of the petition with reference to the pleaded acts of rescission.

The quoted portion of exhibit No. 8 contains the only specific declaration of purpose or overt act in furtherance of that purpose until the petition in this case was filed. It is true that in later exhibits rescission is mentioned but in these attention was merely called to the contents of exhibit No. 8 and the defendant was informed that if a settlement was not made plaintiffs would proceed pursuant to the declaration contained

in exhibit No. 8,

By the petition which was filed herein the plaintiffs renewed the purported rescission by exhibit No. 8; offered in terms to put the defendant in status quo so far as possible; offered to pay for the portion of the inventory which had been disposed of; tendered a return of what they had received less what had been disposed of; and declared that they were ready, willing, and able to pay sufficiently to put the defendant in status quo.

By the following from the prayer of the petition it is made clear, as has been indicated earlier herein, the attempted rescission was of all of the transactions which have been described: "Wherefore, the plaintiffs pray for a rescission of the entire agreement of the parties covering the plant, inventory, and Wegner home; * * *." Coupled with this was no overt act in furtherance of rescission.

The question of whether or not the plaintiffs rescinded depends upon whether or not the plaintiffs were in a legal position to rescind and whether or not what was done amounted to rescission. In a consideration of this question it should be pointed out that under the evidence whether or not there was an overt tender requires no discussion. It is clear that an overt tender would have been refused. Under such circumstances, as pointed out, overt tender is not necessary. This however does not dispose of the question of the sufficiency of evidence to disclose whether or not a valid tender was offered, or whether or not a validly recognizable tender could be made.

As pointed out present ability to make a tender good is an essential of validity of the tender. In this instance present ability to make good would have required the plaintiffs, among other things, to be able to reimburse the defendant for the home for which the defendant paid $15,000; to return the merchandise which had been received of the inventory value of $29,020.01, or at least to account for that which remained and for

the proceeds of that which had been disposed of; and to return the buildings, the real estate, and the operating equipment used in the business.

The preponderance of the evidence discloses that the plaintiffs never even up to the time of trial had a present ability to effectually do anything more than to return the buildings, the real estate, and the operating equipment. It is true that the plaintiff Fredrick P. Wegner said he could have obtained sufficient money to accomplish a rescission but there is nothing else to indicate that he could have or that he took timely steps. The weight of his own evidence is to the contrary. There was therefore never a present ability to make good the pretended tender made first in February 1958. This failure of present ability to make the tender good rendered the purported tender invalid.

From the evidence no conclusion may reasonably be reached other than that there was no possibility of placing the parties in any position even approaching the status quo. The plaintiffs received a going business with an inventory of the value of $29,020.01 which was perhaps the most important factor involved. At the time of attempted rescission, as distinguished from proposals coupled with offers to negotiate, which was the date of the filing of the petition herein, a reasonable inference obtains that the inventoried merchandise had been sold in the ordinary course of business, and replaced several times, with the exception of a quantity of the agreed inventory price and value of $5,843.63 which the plaintiffs contended was obsolete and which was disposed of by plaintiffs to the defendant at that price during the trial of this case, and a quantity of cement of uncertain original inventory value.

A condition of rescission, as has been pointed out, is that rescission may not be effective unless the parties may be placed in status quo so far as the circumstances permit. It may not well be said that under the evidence here that the plaintiffs did or could put them-

selves or the defendant in a position wherein rescission could be recognized.

The evidence discloses that the paramount complaint of the plaintiffs was that in the inventory was included obsolete merchandise, a fact known to the defendant but not disclosed to the plaintiffs. If this is true it became known to the plaintiffs as early as October 1954. Complaint was made of this to the defendant at that time and on occasions thereafter, and the evidence discloses that in each such instance adjustment was made with an agreement for credit therefor on final payment to defendant by the plaintiffs. This character of adjustment was followed down to and including the time of trial except as to the incident related to cement on hand at the time of the trial. In this there does not appear to be any fraud or deception, but even if this appeared it would have to be said that the plaintiffs waited an unreasonable time after receiving knowledge of the facts to claim a right of rescission.

That the plaintiffs accepted benefits arising out of these contracts after purported rescission there can be no doubt. From February 1958 to some time in July 1958 the plaintiffs continued to operate the business as their own. At some time about July 1, 1958, the business was closed as a going business. After that the plaintiffs sold from the then inventory merchandise of the value of about $12,000. This was not accounted for to the defendant although in the case of a valid tender of rescission it would have belonged to the business which business they seek to have this court say belonged to the defendant. On the trial, as has been indicated, the plaintiffs conveyed to the defendant merchandise from the inventory for a consideration of $5,843.63. This acceptance of benefits under the rules cited is another reason why the plaintiffs may not be allowed to say that there was a valid rescission of the contractual arrangements which they have described.

For the reasons stated it must be said that the dis-

trict court did not err in its effectual holding that there was no rescission.

In this action as an alternative to their claim of rescission they seek a recovery in damages for fraud and misrepresentation, that is, if it be found that they have not rescinded but have proved damages that they be allowed to recover damages.

The petition of the plaintiffs relating to fraud and misrepresentation contains numerous specifications some of which could in nowise be or become actionable, so therefore all of them will not be set out herein. Only those which within legal rules could be the basis for action and which have been dealt with from an evidentiary standpoint will be mentioned herein. This will exclude the home sold to the defendant by plaintiffs. The home was sold on a separate written contract and no representation with regard to it is involved.

The specifications which may be the basis of action for damages are stated as follows in Cook Livestock Co., Inc. v. Reisig, 161 Neb. 640, 74 N. W. 2d 370:

"False representations, in order to found an action in the nature of deceit, must not consist merely of promises to be performed in the future, and generally not merely of expressions of opinion by a vendor as to the quality of his goods. They must be representations of known existing facts.

"Fraud must relate to a present or preexisting fact, and cannot ordinarily be predicated on representations or statements which involve mere matters of futurity or things to be done or performed in the future."

Within the meaning of these rules the pleaded specifications of fraud and misrepresentation are, that the sale of the plant was being made to the plaintiffs for what it cost, which cost was $12,500, whereas the cost was only $4,000, and that the yard did a business of at least $60,000 a year, which was also untrue.

The evidence to support the first of these two specifications is insufficient to sustain the contention of the

plaintiffs, even if the representation was made, which the defendant denies. The evidence discloses that long after the sale was made Fredrick P. Wegner found some records from which he concluded that the cost to the defendant was about $4,000. However, defendant adduced evidence to the effect that the cost was at least $8,836.58. Furthermore, it is clear that the purchase was not made on a basis of a valuation of $12,500, but for a price of $9,980.

The charge that the defendant falsely represented that the yard did a business of at least $60,000 a year is not sustained by the evidence. The fact is that the yard did an average business of slightly more than $60,000 for the 4 full years previous to the sale to the plaintiffs with a high of $64,362.16 and a low of $56,822.48, and for the year in which the sale was made, a part of which time it was operated by the defendant and a part by the plaintiffs, it did a business of $62,284.24.

The evidence fails to disclose preponderantly that the defendant was guilty of any fraud or misrepresentation which provides a basis for recovery of damages by the plaintiffs.

The finding of the district court that the defendant practiced no fraud upon the plaintiffs is correct and the judgment of dismissal of the action is affirmed.

AFFIRMED.

SIMMONS, C. J., not participating.