Argued on the merits March 7; affirmed April 16, 1935 ON THE MERITS (43 P.2d 919)
In August, 1932, plaintiffs filed a complaint for damages for deceit and false representations arising upon a contract made January 16, 1922, wherein Henry P. Norton, defendant, agreed with Wilbur L. Rayburn and Iva B. Rayburn, his wife, plaintiffs herein, that Norton would convey to said Rayburns "those certain wheat lands in Alberta, Canada, consisting of 160 acres of land now owned by said party of the first part, being situated about one and one-half miles south of Blackie in Alberta, Canada, free and clear of all incumbrances except one mortgage of $3,000.00, together with interest thereon, upon the payment to him of the sum of $400.00 and the performance of the conditions of this agreement * * *." In consideration thereof, the Rayburns agreed to assign all of their interest in that certain contract and agreement with the Douglas National Bank of Roseburg, Oregon, whereby they were to obtain title to the property in Roseburg, Douglas county, Oregon, known as the Roseburg Apartments, being on the northeast corner of Main and Douglas streets, the land conveyed being 120 by 140 feet, upon the payment *Page 143 
of $5,000, due the said Douglas National Bank, said contract calling for title to said property with merchantable abstract, free and clear of all incumbrances, upon the payment of said $5,000. The Rayburns further agreed to pay the party of the first part the sum of $400, and Norton agreed to pay a note of $400 made by the Rayburns, with interest thereon.
Plaintiffs allege that said Roseburg Apartments were of the market value of $20,000; that plaintiffs assigned and transferred to defendant their interest to said Roseburg Apartments on March 9, 1922, and said transfer was accepted by defendant; that defendant transferred the Roseburg Apartments to an innocent bona fide purchaser and is unable to return the same to plaintiffs. Plaintiffs allege that they paid $100 toward said sum of $400, but later it was agreed that the balance should become due October 1, 1922, to bear interest at 6 percent per annum. Plaintiffs further allege that defendant represented to them that the $3,000 mortgage was to become due November 1, 1924; that it was agreed that defendant should execute to plaintiffs a transfer of said Canada land, according to the laws of Canada, and send the same to the office of the Registrar of Land Titles for the Province of Alberta, Canada, so that it would be there for plaintiffs and delivered to them as soon as they should reach the Canada land; that the plaintiffs reached the Canada land during the first week of April, 1922, and were in possession of and occupied the same, and that the plaintiffs called at the office of said Registrar of Land Titles for said transfer and the same was not there; that plaintiffs notified the defendant that the said transfer was not there and, in response thereto, defendant wrote a letter, in which he stated: "Now, Mr. Rayburn, you need not worry about the situation one little bit. You will *Page 144 
get your papers in a very short time and if you will waste no time in getting in your grain, and then you will have a few minutes to get other things fixed up." Plaintiffs allege that they relied on the continued promises of defendant to execute the transfer of title and remained in possession of the Canada land and continued to plant a crop thereon but defendant never did execute the transfer for the title to said Canada land; that, in reliance upon the representations of defendant, plaintiffs moved onto, occupied and took possession of said Canada land during the first week in April, 1922, and proceeded to build fences thereon, clear the same of rock, repair buildings, cultivate the land, and plant and harvest a crop, at a cost of $2,783; that plaintiffs resided and occupied said Canada land until the first week in October, 1922, and derived an income therefrom amounting to $1,877.44, at a cost of $1,783; that plaintiffs' services were worth the sum of $1,000 and cost the plaintiffs $905.56 more than they received as income from said land.
Plaintiffs allege that during the month of January, 1922, defendant made false representations to plaintiffs relative to said Canada land, as follows: "a. He stated to them that he was the owner of and had title to the said 160 acres of land; b. He stated that the said 160 acres of land in Canada was free and clear of all incumbrances excepting a mortgage for the sum of $3,000; c. He stated that said mortgage would not become due until November 1, 1924"; that said representations were false; that said Canada land had been sold for taxes during the year 1920, and that said sale stood against said land on January 16, 1922, and the taxes amounted to $256; that said representations were material to plaintiffs; that defendant made them as positive assertions and knew that they were false when *Page 145 
he made them or that he made them recklessly without any knowledge of their truth; that he made them of his own knowledge and with the intent that plaintiffs should rely thereon and part with their property and make the contract; that plaintiffs believed said representations to be true and in reliance thereon parted with their property known as the Roseburg Apartments and agreed to pay defendant the sum of $400; that the plaintiffs would not have executed said contract except for their belief that said representations were true, and that in relying upon and acting upon said false representations the plaintiffs suffered damages to the amount of $15,100; that on January 16, 1922, the Canada land was reasonably worth the sum of $16,000, and that plaintiffs' total assets were transferred to defendant as payment for said land, believing that the said mortgage did not become due until November 1, 1924; that at the time plaintiffs were financially unable to assume any mortgage becoming due at an earlier date, which fact was known to defendant; that on May 29, 1922, plaintiffs, after having planted the crops and incurred the expenses described, heard some rumors relative to the foregoing mortgage, tax and tax sale, but did not know whether said rumors were true; that defendant was without the Dominion of Canada, and on said last named date the plaintiffs wrote a letter to the defendant informing him of said rumors; that on June 22, 1922, the defendant answered plaintiffs' letter but did not admit as to whether said rumors were true or false; that plaintiffs were unable to determine the truth or falsity of the representations for a considerable time; that on June 15, 1922, the mortgagee of the Canada land instituted proceedings in the Canada court against one Harry John Anderson, the maker of said mortgage, and against Charles H. Keeney, the owner of the said land, *Page 146 
and against Wilbur L. Rayburn, one of plaintiffs, to foreclose said mortgage of $2,500, together with interest and costs; that on June 21, 1922, notice of said foreclosure suit was served on plaintiff Wilbur L. Rayburn, in Alberta, Canada; that on July 5, 1922, plaintiffs wrote defendant notifying him of the commencement of said suit; that during the latter part of September, 1922, plaintiffs became fully convinced that said representations of defendant were fraudulent, and on that account refused to pay the said sum of $300, and, on account of said false statements during the foregoing part of October, 1922, vacated the said Canada land and at once sought to advise defendant that they were rescinding the contract of January 16, 1922, and to demand the return of the Roseburg Apartments, or their value; that during the forepart of November, 1922, plaintiffs were able to locate defendant, and told him that his said representations were false, declared a rescission of said contract, and demanded the return of the Roseburg Apartments and the $100, and surrendered unto the said defendant said 160 acres of the Canada land; that defendant accepted said land from plaintiffs, but neglected to return to them the $100 and the Roseburg Apartments, or their value; that on February 5, 1923, after defendant accepted the return of said Canada land, he appeared in said foreclosure suit and made application for a stay of the execution of a decree of foreclosure and that in said suit an order was made by the master in chambers that any further action or proceeding for foreclosure, sale or otherwise, is stayed until the 1st of March, 1923; that upon said H.P. Norton, or any one, paying or causing to be paid the arrears of taxes on said land to the end of 1922, and all arrears of interest on said mortgage to the first of March, 1923, and costs of this action, proceedings herein *Page 147 
shall be stayed until November 1, 1923; that between January 16, 1922, and August 27, 1932, defendant had not been within the state of Oregon as much as two years, but was absent from the state; that after making the exchange and contract of January 16, 1922, defendant left the state of Oregon within less than four months and has resided without the state of Oregon ever since, and on January 5, 1923, plaintiffs instituted in the circuit court of the state of Oregon for the county of Lane an action against defendant to recover from him the value of said Roseburg Apartments, $15,000, based upon the said fraudulent representations of defendant in inducing plaintiffs herein to make a contract dated January 16, 1922; that upon the trial in said action, after plaintiffs had rested their case, defendant moved the court for judgment of nonsuit. This motion was denied by the court; said cause was submitted to the jury and judgment rendered in favor of plaintiffs against defendant for the sum of $5,000, which was entered June 16, 1923; that on August 4, 1923, defendant appealed to the Supreme Court of the state of Oregon from said judgment; that on May 1, 1926, the Supreme Court handed down its mandate to the circuit court in which it stated: "The motion for nonsuit * * * should have been sustained"; judgment for plaintiffs was set aside by the Supreme Court and said mandate stated: "It is further ordered that this cause be remanded to the court below from which the appeal was taken with directions to take such other and further proceedings in the cause as may be proper, not inconsistent with the opinion of the court herein, and to enter judgment in accordance herewith", which mandate was duly filed May 1, 1926; that defendant has been absent from the state of Oregon and in Canada at all times since said mandate was filed, except for a period of *Page 148 
much less than one year between May 1, 1926, and August 27, 1932; that if defendant has been within the state he has concealed himself from the plaintiffs in this action; that prior to January 16, 1922, these plaintiffs were residents of the state of Oregon, never had seen the Canada land and knew nothing about it when they made the contract, except what was stated to them by the defendant, and relied upon him exclusively, which facts were all well known to the defendant. Plaintiffs demand judgment in the sum of $15,000.
To the amended complaint defendant demurred upon the following grounds: That the action had not been commenced within the time limited by the laws of the state of Oregon, and this fact appears upon the face of the amended complaint; that it appears on the face of the amended complaint that this cause already had been tried upon its merits and is res judicata; that said amended complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled by the court. Thereafter, defendant filed an answer, admitting the execution of the contract of January 16, 1922; admitting that plaintiffs transferred their interest in the Roseburg Apartments; admitting that defendant agreed to transfer to plaintiffs his interest in the Canada land; admitting that it was agreed that plaintiffs should pay him the sum of $400, that they paid $100 thereon, and no more; admitting that plaintiffs reached the Canada land during the first week in April, 1922, went into possession thereof and occupied the same; admitting that plaintiffs remained in possession of said Canada land and continued to plant crops thereon; admitting that plaintiffs moved onto, occupied, and took possession of said Canada land during the first week in April, 1922, and continued to reside upon and occupy said Canada land until some time *Page 149 
in October, 1922; admitting that the Canada land was worth the sum of $16,000, and admitting that plaintiffs, on January 5, 1923, instituted in the circuit court of the state of Oregon for Lane county, an action against defendant to recover from him the value of said Roseburg Apartments in said action. Judgment was rendered in favor of plaintiffs against the defendant for the sum of $5,000. Thereafter defendant appealed to the Supreme Court of the State of Oregon, and, the appeal being duly heard, the said judgment was reversed and set aside and the mandate of the Supreme Court was filed in the circuit court of the state of Oregon for Lane county on May 1, 1926. Defendant denies the other allegations of the amended complaint.
For a further and separate answer defendant alleges, in substance, that after plaintiffs transferred to him the property known as the Roseburg Apartments, the plaintiffs managed the apartments for one month and obtained the sum of $100, which was paid by said plaintiffs to defendant; that the plaintiffs entered into possession of the Canada land and harvested a crop thereon of the reasonable value of $1,400, and continued in the use and possession of same until about the middle of October, when plaintiffs left and abandoned said premises; that the plaintiffs at no time rescinded or attempted to rescind the said contract or cancel the same in any manner. Defendant further alleges that no representations were made by him as to the due date of the mortgages, aggregating $3,000, against the Canada land; that at all times after the making of said contract and at the time of the commencement of the said foreclosure, said plaintiffs were indebted to defendant in the sum of $400, which said sum was more than sufficient to have paid any and all back taxes on and against said premises; that plaintiffs had not paid *Page 150 
the $400 or any part thereof; that by reason of plaintiffs neglecting, failing and refusing to pay said $400 defendant has retained title to said premises and never delivered the transfers thereof to plaintiffs, but has been, up to the commencement of this suit, ready and willing to make transfer of said lands to plaintiffs in accordance with the terms of the contract. For a second further and separate answer and defense, defendant pleads the statute of limitations of the state of Oregon. For a third further and separate answer and defense, the defendant alleges that plaintiffs commenced an action against defendant January 5, 1923, and sets forth the proceedings therein and the decision in said cause by the Supreme Court, published in 117 Or. 328
(243 P. 560), and that this controversy has been finally adjudicated.
Plaintiffs filed a reply putting in issue the matters not set forth in their complaint. The cause was tried to the court and a jury, and before testimony was introduced defendant objected to any evidence, on the grounds that the former trial in this case was a bar; that the statute of limitations had run against plaintiffs, and that plaintiffs were estopped from bringing this action, which objections were overruled by the court. At the close of plaintiffs' testimony in chief, defendant moved for a nonsuit upon the same grounds, as set forth in the objections, which motion was overruled. At the close of all the evidence, defendant moved for a directed verdict in favor of defendant for the reasons set forth in the motion for nonsuit, which was denied by the court. A verdict was rendered in favor of plaintiffs for the sum of $4,800, and judgment entered accordingly. Defendant appealed.
By appropriate assignments of error, the defendant raises the question that the court erred in *Page 151 
overruling defendant's demurrer to the amended complaint; in denying defendant's motion for nonsuit; in denying defendant's motion for a directed verdict in favor of defendant; in not holding that the issues of this cause were res judicata and determined by the former decision, and in not holding that the plaintiffs were barred by the statute of limitations from bringing this action. Defendant also assigned one error with regard to instruction given by the court to the jury.
Defendant claims that the amended complaint shows that the case was res judicata and also that the statute of limitations had run when the present case was filed. Section 1-206, Oregon Code 1930, provides that in an action at law based upon fraud or deceit the time of two years shall be deemed to commence only from the discovery of the fraud or deceit.
Plaintiffs invoke the provisions of section 1-219, Oregon Code 1930, which provides as follows:
"If an action shall be commenced within the time prescribed therefor and such action be dismissed upon the trial thereof, or upon appeal, after the time limited for bringing a new action, the plaintiff, or if he die and any cause of action in his favor survives, his heirs or personal representatives, may commence a new action upon such cause of action within one year after such dismissal or reversal on appeal; * * *"
Plaintiffs also contend that section 1-214, Oregon Code 1930, tolls the statute of limitations. That section provides as follows:
"If, when the cause of action shall accrue against any person who shall be out of the state or concealed therein, such action may be commenced within the terms herein respectively limited, after the return of such person into the state, or the time of his concealment; and if, after such cause of action shall have accrued, such person shall depart from and reside out of this *Page 152 
state, or conceal himself, the time of his absence or concealment shall not be deemed or taken as any part of the time limited for the commencement of such action."
Defendant contends that section 1-219 is a special statute and that the provisions of section 1-214 do not apply so as to toll this statute, and, the former action having been reversed and dismissed more than one year prior to the commencement of the present action, that the same is barred.
A reference to the code, enacted in 1862, shows that sections 1-214 and 1-219 were enacted at the same time and were parts of the same act or code. It will be noticed that the language of section 1-214 is that, when a cause of action shall accrue against any person who shall be out of the state or concealed therein, such action may be commenced within the terms herein
respectively limited. It does not apply this section to the previous sections relating to the running of the statute of limitations, or to subsequent sections of the statute or code of 1862, which relate to the statute of limitations, but provides that such action may be commenced within the terms herein
respectively limited after the return of such person into the state, etc. We therefore hold that the provisions of section 1-214, which is section 16 of the code of 1862, applies to section 1-219, and provides for the tolling of this statute during the time defendant is out of the state, within the one-year limitation. The statute of limitations appears to be upon the principle that the law does not require a vain or impossible thing. It would be impossible for the plaintiff to prosecute an action in this state against a defendant who was out of the state or concealed therein. The statute should be given a liberal construction. These sections are in pari materia and should be construed *Page 153 
together: 17 R.C.L. 684, § 30; 25 R.C.L. 1006, 1009, §§ 247, 248.
The statute of limitations had not run against plaintiffs' cause of action at the time the present action was commenced, under either section of the statute.
Section 2-1001, Oregon Code 1930, authorizes a judgment of nonsuit against the plaintiff when upon the trial the plaintiff fails to prove a cause sufficient to be submitted to the jury.
Considering defendant's contention that the former judgment was res judicata, section 2-1004 provides that when a judgment of nonsuit is given the action is dismissed; but such judgment shall not have the effect to bar another action for the same cause:Hanna v. Alluvial Farm Co., 79 Or. 557 (152 P. 103, 156 P. 265). The mandate of this court, filed in the circuit court in the first action on May 1, 1926, reads: "The motion for nonsuit, as to the first cause of action, should have been sustained. * * * Hence the judgment will be modified by reversing the same as to the first cause of action only." That judgment controls. It is not necessary to have the affirmance of the circuit court. The first cause of action in the former case is the only one involved in the present case.
It is plain from the opinion in the former case that the judgment was not upon the merits, but that the action was dismissed on account of laches. Evidently the testimony in the present case is different from that in the former one, as in the present case the plaintiffs thoroughly explain that they were not fully informed in regard to the fraud and deceit of defendant until some time in September, 1922. Defendant's letter, introduced in evidence in the present case, which is not graced with the mark of an exhibit in the former case, and apparently was not in evidence, clearly shows that *Page 154 
defendant was the one that was postponing the matter until the next fall when plaintiffs would have an opportunity to raise a crop. This question was submitted to the jury by the following instruction given by the court:
"If the plaintiffs, without reasonable excuse, delayed for the period shown by the evidence, then they would lose the right to withdraw merely by tendering the land back and notifying the defendant of their election to rescind the contract. Under such circumstances, that is, a delay without reasonable excuse, under such circumstances the plaintiffs would be guilty of what is called laches, which means a delay or neglect barring a right to recovery. If you find that the plaintiffs were guilty of laches, then they cannot recover at all in this case unless you find not only that the plaintiffs tendered return of the possession of the Canada property to the defendant and sought to rescind, but that the defendant accepted the tender. If they were guilty of laches by too long a delay, they couldn't force a rescission and an acceptance of the property and they could, under such conditions, recover only if two things are shown, the tender, possession of the property, and the assertion of the rescission, coupled with acceptance of the tender. If the defendant accepted the redelivery of the land and consented to rescission, then the defendant could not complain of the delay, even if there was an unreasonable delay."
Defendant maintains that there is no basis for giving the instruction set out, for the reason that there is no sufficient evidence of any acceptance by appellant of the Canada property. The testimony tends to show that the appellant, Norton, went back to Canada and looked after the taxes and land, etc., and now, as far as is shown, has the possession of the Canada property. He heretofore had the benefit of the Roseburg Apartments and sold the same. We think the instruction was pertinent to the testimony and warranted the jury *Page 155 
in finding that he accepted the proffer of plaintiffs and took possession of the land. The question of laches was properly submitted to the jury upon the testimony in the present case, which differed from the evidence in the former case, and the jury found in favor of plaintiffs.
Black on Rescission (2d Ed.) 1327, § 539, says:
"As to constructive knowledge or notice, a person who has been defrauded does not owe to the person who has cheated him any duty of active vigilance in seeking to discover the fraud. And though he may entertain a suspicion that fraud has been practiced upon him, this is not equivalent to a knowledge of the facts." 66 C.J. 825, § 477.
The plaintiffs, as the jury evidently found, did not acquiesce in the fraud of the defendant. It is stated in 9 C.J. 1205, § 87, as follows:
"No act of a party amounts to a confirmation of a fraudulent transaction, or acquiescence therein, unless done with full knowledge of the fraud and while he is free from its influence. Plaintiff's ignorance of his rights also, as a general rule, negatives any laches on his part, especially where there has been no change in the situation of the parties in respect to the matter in which the relief is sought."
From the appearance of the transaction, plaintiffs were rather inexperienced, while the defendant was an experienced real estate dealer and had been in the exclusive real estate business for a time.
In Hall v. Catherine Creek Development Co., 78 Or. 585
(153 P. 97, L.R.A. 1916C, 996), the court quoted from Raymond v.Flavel, 27 Or. 219 (40 P. 158), as follows:
"The notice must be more than would excite the suspicion of a cautious and wary person; it must be so clear and undoubted, with respect to the existence of a *Page 156 
prior right, as to make it fraudulent in him afterwards to take and hold the property."
The testimony in the case tended to support the allegations of the complaint, which we have set out quite fully, and to sustain the verdict. There was no error in the court submitting the question to the jury by the instructions above quoted. Two juries have found a verdict in favor of plaintiffs.
We find no error in the record; therefore, the judgment of the circuit court is affirmed.
CAMPBELL, C.J., and BAILEY and RAND, JJ., concur. *Page 157