JOSEPH O. DOUGHERTY AND LAVERNE DOUGHERTY,
HUSBAND AND WIFE, APPELLANTS, V. DONALD L. ROBSON
AND MAROLYN R. ROBSON, HUSBAND AND WIFE, AND
UNIVERSAL DEVELOPMENT, INC., APPELLEES.

336 N.W.2d 316

Filed July 15, 1983. No. 82-270.

Herbert J. Friedman and James E. Dunlevey of Friedman Law Offices, for appellants.

Ginsburg, Rosenberg, Ginsburg, Cathcart, Curry & Gordon, for appellees.

BOSLAUGH, WHITE, and CAPORALE, JJ., and BURKHARD and FINN, D. JJ.

BURKHARD, D.J.

The plaintiffs-appellants, Joseph Dougherty and LaVerne Dougherty, husband and wife, hereinafter referred to as Joseph and LaVerne, alleged in their amended petition against the defendants a breach of a fiduciary duty by defendant-appellee Donald L. Robson, hereinafter called Donald, in that he allegedly conspired to convert the title to plaintiffs' farm to his own purposes and was unjustly enriched thereby. Plaintiffs further allege that Marolyn R. Robson, wife of Donald, hereinafter called Marolyn, and Universal Development, Inc., a Nebraska corpora-

tion owned by Donald and Marolyn, hereinafter called Universal, also conspired to convert the title to the farm to their own purposes and also became unjustly enriched.

Plaintiffs prayed that a constructive trust be imposed on specific stock and on all other real or personal property acquired by the defendants with funds borrowed from the federal land bank and secured by a loan on plaintiffs' farm; for an accounting of all profits made by the defendants through the investments of said funds; and for judgment for said profits, less proceeds of the loan already returned.

The District Court found that LaVerne had executed a release of her claims and that Joseph had not proved his case of fraud to raise the constructive trust by clear, satisfactory, and convincing evidence. The trial court dismissed plaintiffs' petition as amended, and this appeal followed. We affirm the judgment of the District Court.

Plaintiffs assign as error the following: (1) The court erred in finding that Joseph failed to prove his case by clear, satisfactory, and convincing evidence; (2) The court erred in failing to find that Donald was an escrow agent and, as such, owed a fiduciary duty to plaintiffs, which duty said defendant breached; (3) The court erred in failing to find that the defendants conspired to convert the title to a certain farm for their own purposes; (4) The court erred in failing to find that the defendants have been unjustly enriched by their fraud and conspiracy; (5) The court erred in failing to impose a constructive trust on the proceeds of the money obtained by Donald through his improper conduct, and to order an accounting thereof; and (6) The court erred in finding that there was an accord and satisfaction, and in dismissing the causes of action of LaVerne.

This case revolves around a farm in York County, Nebraska, on which Joseph was raised and which had been owned by members of his family for many years. Joseph was in the construction business and

also owned apartments in Lincoln, Nebraska.

Donald was engaged in the insurance and real estate business in York, Nebraska, since 1948, and had sold bonds and insurance to Joseph prior to the events involved in this case.

In 1966 Joseph, as trustee, entered into a contract for purchase of the York County farm from Helen M. and Louis Kaspari and William B. and Carol Haupt, relatives of Joseph. The purchase price was $30,000. The contract named Donald as escrow agent, and the deeds were delivered to him.

In 1969, and for some time before then, Joseph had a considerable drinking problem. He was also experiencing business problems and had placed title to his Lincoln apartments in a friend, Arch Walker, who subsequently died. Joseph then discussed his problems with Donald, who suggested forming a corporation to own the apartments. Universal was formed, and ownership of the apartments was placed in the corporation, but they were managed by LaVerne.

On August 6, 1969, Joseph, as trustee, executed a land contract for the sale of his farm to the Robsons for $30,000, and also executed a warranty deed to accompany the contract. The contract named Donald as escrow agent to hold the deed until the terms of the contract were fully completed. Also dated August 6, 1969, was a warranty deed for the farm from Donald and Marolyn to Universal.

At this point, Donald, as escrow agent, was holding the deeds from the Kasparis and the Haupts to Joseph, and Joseph's deed to the Robsons. As the president of Universal, he held the deed from the Robsons to the corporation. Joseph continued to operate the farm and completed the payments for its purchase in December 1971.

On October 14, 1970, Donald filed with the register of deeds of York County the three deeds to the farm. On behalf of Universal, Donald obtained a loan from the federal land bank, secured by a mortgage on the

farm, in the amount of $38,500. The loan proceeds were $36,575. Payments on the loan were $577.50 annually, with a final payment of $18,865 due in 2005. In applying for the loan, Donald signed a financial statement showing Universal owed Joseph $10,000. However, Donald's only payment to Joseph on the land contract was a $500 downpayment, and the balance due was $29,500.

Donald deposited the proceeds of the federal land bank loan in a personally owned business account. None of the proceeds were paid to Joseph or used to pay off Joseph's contract for the purchase of the farm. The deposit was made on October 14, 1970, the same date the loan proceeds were disbursed by the federal land bank. Donald used most of the loan proceeds for personal and investment purposes.

There is a factual dispute as to whether LaVerne knew that Donald intended to mortgage the farm before he did so in October 1970. Donald testified that he discussed the matter with LaVerne beforehand. LaVerne testified that he did not. Donald did not discuss the mortgage with Joseph until some time after he had given the mortgage and received the loan proceeds.

There is no argument about the fact that a controversy arose between the Doughertys, on one side, and Donald, on the other side, concerning the mortgaging of the farm. As a result of that controversy, an agreement dated April 7, 1975, was drawn up by John Brogan, an attorney in York, Nebraska, hired by the Doughertys. The agreement of April 7, 1975, was entered into between Donald and the Doughertys. The agreement provided that Donald pay to the federal land bank sufficient moneys to reduce the mortgage loan balance on the farm to the sum of $5,925; that Donald pay the sum of $820.74 on interest to the federal land bank; and that Donald execute two corporate warranty deeds as president of Universal, conveying the real estate in York and Lancaster Counties to LaVerne, subject to the aforesaid

debt of $5,925 on the York County real estate and a loan to Provident Savings & Loan Association of Lincoln on the Lancaster County real estate. The figure of $5,925 was arrived at by allowing Donald a credit of $4,000 for payment for services rendered to the Doughertys, and $1,925 was the value of stock which had to be purchased in the federal land bank in order to secure the original mortgage. Donald was also to assign all interest in Universal to LaVerne and deliver all corporate records to her, but this was changed by addendum on April 7, 1975, to provide that Donald shall retain ownership of Universal. The parties agreed that the performance of the agreement shall constitute a full and complete settlement of all claims of Donald against the Doughertys and of all claims of the Doughertys against Donald, subject to full performance of the agreement on or before May 1, 1975. The deeds to the York and Lancaster County properties were executed and delivered prior to May 1, 1975, but the mortgage balance on the York farm was not reduced to $5,925 by May 1, 1975. The Doughertys then retained attorney E. D. Warnsholz.

Donald talked to Warnsholz on different occasions regarding settlement of the matter with the Doughertys. The Doughertys claim that the April 7, 1975, agreement was breached because the mortgage balance was not reduced to $5,925 by May 1, 1975. However, the mortgage was subsequently paid down to said amount on February 11, 1976, after the Doughertys had retained Mr. Warnsholz. There was therefore full compliance with the April 7, 1975, agreement, as of February 11, 1976. Mr. Warnsholz also said that Donald had to pay something further, beyond the April 7, 1975, agreement, in order to settle with the Doughertys, and that was the balance of $5,925 on the mortgage on the York farmland. Mr. Warnsholz said that if this was not paid, he would file suit against Donald. Mr. Warnsholz had already prepared a petition in LaVerne's name as plaintiff

and had mailed a copy to Donald on March 19, 1976. Donald paid off the $5,925 loan balance on May 13, 1976. Prior to May 13, 1976, Mr. Warnsholz also made demand on Donald for $1,500 for attorney fees for LaVerne. Donald paid the $1,500 to Mr. Warnsholz on or about June 11, 1976, by delivering a check to Mr. Warnsholz at his house, with a notation on the check that it was for "Atty fee for LaVerne Dougherty Settlement." Donald had expected a release signed by both Joseph and LaVerne in exchange for payment of the $1,500, but the release, dated June 8, 1976, was signed by LaVerne only. According to Donald, Mr. Warnsholz said that Donald did not need a release from Joseph "because the original contract was giving LaVerne Dougherty as the party and that's all I needed." This reference is apparently to the April 7, 1975, agreement, which provided that the York and Lancaster County properties were to be transferred to LaVerne only. The release was entitled "Mutual Release of Claims," and it provided that for good and satisfactory consideration LaVerne and Donald released any and all claims which they may have against each other. The Doughertys subsequently filed suit on October 7, 1976.

Joseph and LaVerne admit that they both received the benefits of the April 7, 1975, agreement as well as the benefits of the additional payments by Donald of $5,925 and $1,500.

The April 7, 1975, agreement was intended to be a settlement of all claims between Donald and the Doughertys. Although Marolyn and Universal are not signators to the agreement, they too would be released if Donald were released. " 'If one of several joint wrongdoers makes settlement with the injured party and pays him damages which he agrees to receive and does receive as full compensation for all damages sustained, it will release all of the joint wrongdoers.' " *Crnkovich v. Scaletta*, 203 Neb. 22, 25, 277 N.W.2d 416, 418 (1979), citing *Fitzgerald v.*

*Union Stock Yards Co.*, 89 Neb. 393, 131 N.W. 612 (1911).

Donald eventually fully performed, and more, under the April 7, 1975, agreement. Plaintiffs have waived any breach, and are bound by the agreement and have no further claim against the defendants. " 'Where a party to a contract, with full knowledge of the facts and with knowledge of a breach by the other party, receives money in the performance of the contract the breach will be deemed to have been waived.' " *Wegner v. West*, 169 Neb. 546, 552, 100 N.W.2d 542, 547 (1960). After an agreement to compromise and settle a controversy has been entered into by the interested parties, the original matter in dispute is not a proper subject of suit or defense, where fraud, mistake, or duress in procuring the contract is not pleaded. *Springfield Fire & Marine Ins. Co. v. Peterson*, 93 Neb. 446, 140 N.W. 760 (1913). Plaintiffs do not plead fraud, mistake, or duress in connection with the April 7, 1975, agreement. The trial court was correct in dismissing plaintiffs' amended petition.

In addition, the release executed by LaVerne on June 8, 1976, released all of her claims against Donald, which release in effect released Marolyn and Universal, the other alleged wrongdoers.

The judgment of the District Court is affirmed.

AFFIRMED.

CAPORALE, J., concurs in the result.